Good morning. Craig Daly on behalf of Robert Bojaj. I'd like to reserve three minutes for rebuttal, please. This is an appeal from a murder conviction involving a car accident, which in the state of Michigan, at least, is very rare in itself. Even drunk driving cases where there are fatalities in the state of Michigan are rare. Two-tenths of every percent of drunk driving cases involve some type of fatality. And the vast majority of those cases are single car accidents where somebody is drunk, drives off the road and kills himself. So this is somewhat of a rare case. The other thing that's somewhat unusual about this appeal is it is a single-issue appeal in terms of its substance. But there's also a procedural default claim. And I'd like to begin with that, just spend a few minutes on that, because if you agree with my position that the state is precluded from arguing harmless error, then our chances of success are very, very slim. Our chances of prevailing are much better. Historically, procedural default issues have taken on more importance over the last few decades. Procedural default issues have been used primarily by the state to prevent state defendants from getting habeas relief. But procedural default issues are really a two-way street, and I think defendants need to more often invoke the waiver rules that we're invoking here. The doctrine that we're looking at is the invited error doctrine, which is grounded in the waiver doctrine, which says that if a party misleads the judge or invokes the judge to make a mistake, then they should be precluded from arguing on appeal the benefits from that mistake. What mistake did they encourage him to make? I must say I'm just mystified by your invited error argument. Okay. Let's go back to the trial court and the pretrial proceedings. The defense moved for a Dalbert hearing, which is a gatekeeping procedure, right? The defense presented evidence to the trial judge that the EDR, the event data recorder, may not be reliable. The prosecutor said, look, this is not a gatekeeping issue for you to decide. This is a battle of the experts. What are the two positions that they took that are inconsistent? Okay. The prosecution's position was this is a discovery proposition. What are the two specific things that they disagreed on? It seems to me they've been in favor of not having a Dalbert hearing all along. On appeal, ultimately you're correct in the sense that the state... Okay. I just... Normally when you have invited error, they say, please do this, and then they do it, and then they challenge it. What is the this that they asked the court to do and now are challenging? What the prosecutor at the state court level asked for is don't do this. Don't conduct a Dalbert hearing. And on appeal, they say it's not necessary to do it, right? And on appeal, then they ultimately admit that they were wrong. I'm not talking about what they admit. What they're requesting the court to do is consistent with what they're arguing on appeal, isn't it? No. It's just the opposite. I'm still missing it. Okay. So at the trial... Can I say we know we should have had a Dalbert hearing? Yes. Absolutely. So then the question becomes, how did the state court trial reach that decision? And how does that figure into the core of the argument here? It figures in because what happened was the state prosecutors said, let this evidence come in. Let us benefit from the scientific evidence. Let us spend days on this. Let us argue to the jury that it's beyond just opinion evidence, that it's scientific evidence. Let us use that to convict the defendant. That's their argument on appeal? No. That's what they did at trial. But then on appeal, they said, oh, maybe we were wrong about telling the trial judge. How about even if we're wrong, there was no due process violation? Well, that's what the trial judge ultimately said, right? I think you're missing the... I think we're in the trees as opposed to the forest here. I prefer the trees over the forest. Well, ultimately, you've got to look at the forest. And the bottom line is, you know, any failure to hold a Daubert hearing was a state evidentiary problem. And the evidence came in. There was evidence that it was not entirely reliable. I mean, you ended up with the jury having, it seems to me, a pretty fair picture of what the strengths of this evidence were and what its weaknesses were. And there was a whole bunch of other stuff in the record as well. So how do we get to a due process violation from that picture? Well, Judge Gibbons, I think that your initial statement is correct with regards to an evidentiary hearing and due process. But we have to go back to where the trial court started with and said, look, the question of the evidence between murder for which Mr. Boyer was convicted and gross negligence was a close call. He said it was razor close. I'm not seeing how that responds to Judge Gibbons' question. Well, because when we get to a certain level of evidence... You're saying the issue is close, so therefore the evidence wasn't overwhelming or could have been more overwhelming. But her question is, where's the due process? I don't want to rephrase your question. The way I took it was, where's the due process problem here? The due process problem... You can't say there's a due process problem because the issue was close as to whether he did it or not. The due process has to do with reliability of the jury's verdict based on evidence that the prosecution argued was scientific when it was not. With the rest of the evidence... Does the Constitution say you can't do that? Or do local rules of evidence say you can't do that? No, it's not a question of state law. It's a question of when a defendant is convicted on evidence that the state court trial judge says reached the level of denying the defendant due process in a fair trial. The picture here is government expert, defense expert, lay witnesses. Your client was driving very, very fast. He was driving imprudently. The razor-thin question is whether that conduct includes conduct such that the jury could find the proper intent for second-degree murder. But as an evidentiary matter, it's really not close. It doesn't really matter which of the iterations you believe. And the point I was making was even with the exclusion of this information, which was not represented to be really more than it was, you still got a difficult situation. The difference is if you take out the EDR, what you have is opinion evidence only. Opinion evidence from civilians, which varied greatly. Opinion evidence from the prosecution's expert using traditional reconstruction, which was rebutted by the defense. Pardon me, I'm just not seeing how that's responding to the question. You're saying this evidence was important. Absolutely, that's exactly what... The point of the question is why does it have to be left out? Why does it have to be left out? Because what's in the Constitution says that the jury can't hear it. Because there was no Daubert hearing? There's nothing in the Constitution about Daubert hearings, I don't think. I think you're correct in the sense that the Daubert hearing in itself is not the Constitution. Right, so you have evidence that a court admitted maybe they violated state law. We're not here to adjudicate that. We're assuming that it complied with state law. How did it violate the Constitution for the jury to hear additional evidence, which could be challenged or undermined or criticized or cross-examined, and was allowed to hear that and came to the conclusion that it met the standard for second-degree murder? I don't understand... I think the answer, Judge Rogers, is simply this. In a criminal case, the defendant has a right to be convicted only on reliable evidence. And that the EDR was unreliable. It was the only, quote, scientific evidence that the government had. What's your best case for the Constitutional requirement that all evidence be reliable, whatever reliability? Well, I don't think there's any case that says all... No case that says that, because normally we check on reliability of evidence by cross-examination. Yes, but in... And counter-evidence. I'm sure there's a lot of unreliable evidence that goes before a jury. But that's the purpose of the trial, Judge, is a gate-keeping proposition to keep that evidence out. Right. That's why we have inventory rules. Okay, so to answer your question about what the cases are, there are two cases out of the Sixth Circuit. The EG case, which the district court talked about. And the district court says, specifically, that the EDR evidence was significant in terms of the prosecution's case, which is, I think, a different position that you're taking. So we have EG, and we have Barker v. Eukins. Both cases where there was evidence that was admitted, and then ultimately the state court said, that didn't make a difference, it was harmless. And I think you're essentially in that same position. And it's not an easy position for an appellate court. Where do you draw the line between this evidence made a difference, and it's invading the province of the jury? I mean, Mr. Boyer had a right to trial by jury, right? So where do you draw that line as to, this affected the outcome and this didn't? And that's where that... We are called upon to make those kinds of determinations all the time. I mean, that's just a classic analytical process that we go through in many, many, many contexts. I don't disagree with that. But in a case like this, where if you take out the one part that everybody now agrees should never have been part of the case, that the government relied on and told the jury, part of this is just popular culture. You're arguing harmless error. I'm questioning whether there was a violation of the Constitution. Okay? Where's the violation of the Constitution? I'm just not seeing it, and you give me cases about whether the error was harmless, sort of assumes there was an error. Where's the error? I don't see it. The United States Supreme Court has always recognized that there is a due process right not to be convicted on certain evidence. And Estelle, that's where they start with. And that's really a judgment call for the courts to make. At what level does the evidence come to the point that it rises to the level of a due process violation? Well, I'm not even sure that there was error in admission of this evidence. So it's pretty hard to get from, you know, not being sure it was error to being sure that it violated due process. Well, you would be the first one, no disrespect to you, that you'd be the first one, either in the state or the federal courts, to say there wasn't an error. It may be correct that a Daubert hearing should have been held. However, this evidence had some evidentiary value, and it was not represented to be anything more than it was. That's, I think, the big disagreement. I think it was the big difference is for a prosecutor to say that this is the linchpin in terms of scientific evidence that so many people believe the juries rely on probably because they watch too much TV. Fingerprint, DNA, the black box. What does everybody look for in a plane accident? The black box. It tells the truth. I think you have answered the question. Okay, thank you. And your time is up. Thank you very much. Good morning. May it please the court. Bruce Edwards, Assistant Attorney General for the Warden. I've been as mystified by the procedural default argument as your honors. The very first rule of procedural default is the state court has to have enforced it. There was no enforcement of a procedural default by the Michigan Court of Appeals. A prosecutor is always free to argue that if an error occurred below, it was harmless. That's all the state court did. It seems to me the first issue for this court is whether or not the Michigan Court of Appeals opinion is entitled to ed pediferance. The district court said, I'm not sure, so I'll review it de novo. But it's the state's position that it should have been given ed pediferance. Now the Court of Appeals did not overlook the due process claim. They actually said, petitioner argues a due process claim. And then they say, this constitutes preserved non-constitutional error. And the district judge says, well, I suppose they might have just meant that the error wasn't so big that it reached the level of due process. Exactly. And as has already been mentioned this morning, Dawbert is not a constitutionally based opinion. It was supervisory authority by the U.S. Supreme Court over federal courts. So the failure to hold a Dawbert hearing is never a ground for granting habeas relief. So really what you have is because Michigan has also adopted the Dawbert rule. Does Michigan have any similar, any evidentiary rule that's similar to Dawbert? It does. It does. But it's a matter of state law under a Michigan rule of evidence. I didn't mean to suggest that it wasn't. I just became curious. No, no. The Michigan Supreme Court has adopted the equivalent of a Dawbert through a Michigan rule of evidence. And that's why the Michigan Court of Appeals says, well, gee, you know, under Michigan rule of evidence 702, you probably should have held this hearing here. And then they said, assuming the EDR evidence would have been proven unreliable at the Dawbert hearing, we find any error was harmless. Now, they're clearly entitled to do that. We don't know what the result would have been had there been a Dawbert hearing. Perhaps it would have been allowed in. I understand that you argue that this was not, there was no constitutional error because Dawbert didn't get you there. The trial judge said they probably should have had a Dawbert hearing. But I want you to address this notion that your adversary raises about invited error and what conduct, if any, do you see that constituted invited error such that the prosecutor led the court down the wrong path? Right. There is no invited error. A defense attorney says, your honor, I would like a hearing. The prosecutor says, your honor, I don't think you need to hold that hearing because, and then they give whatever their reasons are. And then the judge says, yeah, I think you're right, Mr. Prosecutor. I don't need to hold the hearing. And then after the defendant's been convicted, the defendant then comes in and says, you should have held that hearing, judge. And then the judge says, I think you're right. I should have. And then it goes up to the Michigan Court of Appeals and then the prosecutor says, we didn't think a hearing was required, but if you read this record, even if we assume the EDR testimony had not come in, he clearly would have been convicted. And so, therefore, there is no invited error. Every time there's an objection to evidence that the prosecutor opposes and the judge keeps it out or lets it in, you know, let's say defense attorney objects to proposed hearsay, your honor, that's a present sense impression. And then it's later decided that it really wasn't a present sense impression. The prosecutor's not precluded from arguing on appeal that admitting that evidence, perhaps if it was improper, doesn't warrant a new trial. That's not invited error in the slightest. So it's the state's position that under EDPA deference, there's just no question that this failure, this is really the state law error of not holding a Daubert hearing. We don't know what the result of a Daubert hearing would have been, but even if we assume this EDR data-related testimony had not come in, it was a harmless error for several reasons. But most importantly is the conventional calculations the state's expert produced under an unobjected to method called momentum analysis showed that the top range for the petitioner's vehicle was 117 miles an hour to 126 miles an hour. And then when you recalculated using the EDR data, it was 119 to 129, almost the same. And I refer you to page ID 939. And that just shows you that basically you have calculation A, no objection. He was speeding really fast. Calculation B, perhaps objectionable. Basically the same result. Well, then by definition, if it's cumulative to properly admitted evidence, there would be not the kind of error that would result in a new trial. Counsel, I can't speak for my colleagues. To me, it's a closer issue whether this evidence made a difference to the jury than it is whether the evidence should have been admitted in the first place. You could make a rational, you could make a logical argument, and I could see the basis for it, for saying if this was error, it caused some harm. It was extra evidence in a close case. Extra different evidence in a close case. But it seems to me your easier argument is that there's nothing wrong with admitting it. I agree that there was nothing wrong with admitting it. But the Court of Appeals sort of jumped ahead and just said, well, we're just going to assume for the purposes of discussion that perhaps it shouldn't have come in. And they said, even then, it's harmless. It's because of the epidefrance that you want to focus on the harmlessness rather than... Yes, but I totally agree that there is no constitutional error that's been proven by any stretch. But we also have lots of... If you say there's no constitutional violation, that would be the end of the case. Absolutely. I'd have to get into whether there was epidefrance. I totally agree. I totally agree. But there was a lot of other evidence. There was lay testimony about extreme speeding. He had just crested a hill. When you crest a hill, you ought to be extra careful. He's riding the rumble strips for three to five seconds. When I was driving down from Lansing yesterday, I hit the rumble strip twice and I paid attention. And I was off it in half a second each time. But he had triple... He was drunk, super drunk. And even his own experts said he might have been going 97 miles an hour. So when you put all that together, I don't see how it possibly could be unreasonable for the Michigan Court of Appeals to say, assuming for the sake of the argument, the jury shouldn't have heard that EDR-related testimony, based on all the other testimony, any error was harmless. In fact, the prosecutor in her closing argument, and I refer to the court to page ID 1149, said, Petitioner could not control the car. It doesn't really even matter what the speed is. In the end, the speed was too high for his condition. Driving at night, super drunk, you know, weaving in and out, staying on the rumble strips, all those activities put together clearly establish the kind of malice that's required for a second degree murder. So the fact, the evidence that would go to the intent requirement for second degree murder would include his drunkenness, his reckless driving, and his speed. Would there be anything else that you think? Well, staying on the rumble strips for three to five seconds. Well, that would be the reckless driving. But, you know, sort of dividing it up. Instead, he actually weaved three lanes from this to this to this, and then going over the crest of a hill without slowing down. All those things are part of the reckless driving. I agree. But when you put all those things together, in fact, the prosecutor in her closing argument said, I'm not arguing just speed, there's all these other things. When you look at all of them together, we find the kind of malice that's necessary for a second degree murder conviction. And it seems to me that this court should find that the EDPA deference does apply, and there was either no constitutional violation or skipping past that, just saying we don't need to decide. There was clearly the ruling that it was harmless error, it was not objectively unreasonable. But even the district court who reviewed DeNovo reached the result that, even looking at it at DeNovo, this case is nothing like the EG case where there's true junk science. The Sixth Circuit called it bunk. This EDR testimony is not bunk at all. They called in an expert from Toyota, and they cross-examined the witnesses about this, and lo and behold, the EDR data produced the result almost the same as the conventional, unobjected-to momentum method of calculating the speed. So with all those things put together, there's either no constitutional violation or the harmless error ruling was not objectively unreasonable. If there are no other questions, I'll sit down. Thank you, Your Honors. Let me try to address, Judge Rogers, your concern about this isn't a constitutional error to begin with. There's nothing wrong with the admission of the evidence. I think, really, if you're going to sit as an appellate court reviewing a state habeas review, and you apply the Yeltsin look-through doctrine, you're not looking at the state court of appeals decision because they bypass the constitutional issue. The only merits adjudication is the state court. And it was the state trial court that said that this was a due process violation, that Mr. Boyer was denied a fair trial, and it was not harmless. And if that analysis is correct, then the position that the prosecution has just stated that you have to find that this is objectively unreasonable is a very high bar, very difficult for you to do, to overrule the state, the only merit adjudication on the constitutional issue. The only other thing that I'd point out, you may find this helpful. We're bound by the state district court's... Trial judge. State trial judge's determination of what's a violation of the Constitution. It's the only merits adjudication on the constitutional issue. The Michigan court of appeals bypassed it. I thought that the deference was a deference that goes in favor of conviction. You're saying it goes in favor of all the factual issues of the last... The defendant is entitled to the same deference of a ruling that there's a constitutional violation as if there was a ruling that there was not. As if it made a difference. Even if it didn't make a difference, we're bound by that. Yes, correct. Do you have any kind of case that supports that? Well, I think there are a number... That's wildly counterintuitive. That's why I'm wondering if you have cases. No, I think it's just the opposite. I think it's the same thing that I started with talking about it being a two-way street. That defendants are... EDPA is a two-way street. Do you have cases that say EDPA's a two-way street? Oh, yeah. I think that... Well, I don't have it in front of me. You don't have any cases. Not that I can say it off the top of my head. I think if it was a two-way street, after all these years, there'd be a case. Well, the statute says that if there's a merit adjudication by the state court on a constitutional issue, it's entitled to deference. So what difference would it make if we're on the winning side or the losing side? I'm asking you if you have cases. I don't have a case off the top of my head. If you want me to submit a supplemental brief, I'd be glad to do that with the case. The last thing that I'd just point out, you may find this helpful or not on the issue if you get past the constitutional issue, on the harmless error test. The Harvard Law Review, Volume 130, Number 7, did an analysis and critique about the harmless error test and what that involves. And I think that may be helpful. If it's not, it isn't. Thank you very much. Any questions? Thank you. We thank you both for your argument. Please take your seats carefully.